**Affirmed and Opinion filed April 10, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-01145-CV

## IN THE INTEREST OF M.M.M. AND S.H.M., MINOR CHILDREN

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2012-45952B**

### O P I N I O N

Appellant, Marvin McMurrey, III, appeals several orders in which the trial court denied McMurrey's motion for summary judgment but granted summary judgment in favor of appellee, Cindy Close, and adjudicated her as a parent of the minor children, M.M.M. and S.H.M. We affirm.

### I. BACKGROUND

On July 27, 2012, Close, an unmarried woman, gave birth to the twins who are the subject of this dispute. It is undisputed, and testing has confirmed, that Close is not genetically the children's mother. Rather, the children were conceived

via assisted reproductive technology, using McMurrey's sperm and an unknown donor's eggs, and implanted in Close.

There was no written agreement regarding the parties' intentions when they pursued this assisted reproduction, and they vigorously dispute their intentions. Our disposition does not depend on resolution of this dispute. However, in short, Close and McMurrey have been platonic friends for many years. Close claims McMurrey was aware of Close's desire to have children and they agreed to co-parent the children. In contrast, McMurrey claims Close agreed to carry the children solely as a surrogate for McMurrey and his partner and play no role in raising the children.

About two weeks after the birth, McMurrey filed the present suit, seeking a declaratory judgment that (1) he is the children's father, and (2) Close has no parental relationship with, or standing to pursue rights to, the children because she was solely a "surrogate or gestational carrier." In essence, McMurrey seeks a declaration that he is the sole parent and the children have no mother.[1]

Close filed a counter-petition and also named McMurrey's partner as a defendant. Close requests orders concerning conservatorship and child support. Close also seeks monetary damages for breach of fiduciary duty, fraud, intentional infliction of emotional distress, malicious prosecution, promissory estoppel, and conspiracy.

The trial court signed temporary orders concerning the children who were in McMurrey's possession after their release from the hospital. The trial court also bifurcated the proceeding—to decide the maternity dispute before the other issues.

---

[1] There is no other woman claiming to be the mother. Under the Texas Family Code, the anonymous donor who provided the eggs for assisted reproduction is not the mother. *See* Tex. Fam. Code Ann. § 160.702 (West 2014); *see also id.* § 160.102(6) (West 2014).

Both parties moved for summary judgment on McMurrey's declaratory judgment action. On November 8, 2012, the trial court signed three orders: (1) an order granting Close's traditional motion for summary judgment and finding that she is the mother of the children as a matter of law; (2) an order granting Close's no-evidence motion for summary judgment; and (3) an order granting McMurrey's motion for summary judgment only to the extent that he be declared the father. In the latter, the trial court struck through McMurrey's proposed language that would have ruled Close has no parental relationship with the children.[2] Thus, through this action and the grant of Close's motion, the trial court implicitly denied McMurrey's motion relative to his request that Close has no parental relationship with the children. The trial court set a hearing on a later date for issues concerning conservatorship and child support. The trial court severed the declaratory judgment action from the remainder of the case, thereby rendering the summary judgment orders final and appealable.

## II. STANDARD OF REVIEW

When a trial court resolves a declaratory judgment action via summary judgment, we apply the standards applicable to reviewing a summary judgment. *See Lidawi v. Progressive Cnty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A party moving for traditional summary judgment must establish there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2013). If the movant facially establishes his right to summary judgment as a matter of law, the burden

---

[2] Although the trial court signed an order granting Close's no-evidence motion, the appellate record contains no such motion, despite McMurrey's original request that it be included in the record and subsequent request for supplementation. This omission is immaterial to our disposition because we conclude the trial court properly granted Close's traditional motion.

shifts to the nonmovant to raise a genuine issue of material fact sufficient to defeat summary judgment. *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 529 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000)). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment it should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We review the summary judgment de novo. *Id.* We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

### III. ANALYSIS

McMurrey relies on the fact that Close is not genetically the mother of the children to support his request for a declaration that she has no parental relationship with them. Close contends that under the applicable statute, she is the mother because she gave birth to the children. In all three of his appellate issues, McMurrey challenges application of that statute.

Chapter 160 of the Family Code is the Texas enactment of the "Uniform Parentage Act." *See generally* Tex. Fam. Code Ann. §§ 160.001–.763 (West 2014). Section 160.201, entitled "Establishment of Parent-Child Relationship," provides,

> (a)  The mother-child relationship is established between a woman and a child by:
> (1)  the woman giving birth to the child;
> (2)  an adjudication of the woman's maternity; or
> (3)  the adoption of the child by the woman.

4

*Id.* § 160.201(a).

As Close argues, section 160.201(a)(1) provides that a woman is the mother if she gives birth to the child, and there is no additional requirement that the woman be genetically related to the child. *See id.* In his overlapping first and second issues, McMurrey contends section 160.201(a)(1) is not conclusive and creates merely a presumption of maternity by giving birth, which may be rebutted with genetic evidence. In his third issue, McMurrey argues section 160.201(a)(1) is unconstitutional to the extent it is conclusive and not merely a rebuttable presumption.

## A.     Contention regarding rebuttable presumption

McMurrey's contention involves an issue of statutory construction, a legal question which we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *see* Tex. Gov't Code Ann. § 312.005 (West 2013). If the statute is unambiguous, we adopt the interpretation supported by its plain language unless such interpretation would lead to absurd results. *TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 349. We consider statutes as a whole rather than their isolated provisions. *Id.* We presume the Legislature chose a statute's language with care, including each word for a purpose while purposefully omitting words not included. *See id.* We must not interpret a statute in a manner that renders any part meaningless or superfluous. *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

McMurrey's position depends on construing the provisions for establishing maternity in conjunction with the provisions for establishing paternity. The crux of

his argument is that because certain situations establishing paternity are rebuttable by genetic testing, the rule that maternity is established by giving birth is also rebuttable by genetic testing.

Section 160.201(b) provides that the father-child relationship is established between a man and a child by:

>    (1)    an unrebutted presumption of the man's paternity of the child under Section 160.204;
>
>    (2)    an effective acknowledgment of paternity by the man . . . unless the acknowledgment has been rescinded or successfully challenged;
>
>    (3)    an adjudication of the man's paternity;
>
>    (4)    the adoption of the child by the man; or
>
>    (5)    the man's consenting to assisted reproduction by his wife . . . which resulted in the birth of the child.

Tex. Fam. Code Ann. § 160.201(b).

Section 160.204, referenced above in section 160.201(b)(1), defines five situations in which a man is presumed to be the father of a child. *Id.* § 160.204(a). In general, four of the situations apply when the father is married to the mother at the time of the birth or during certain time frames before or after the birth. *See id.* § 160.204(a)(1)–(4). The fifth situation applies when the man continuously resided in the child's household during the child's first two years and represented to others the child was his own. *Id.* § 160.204(a)(5). However, section 160.204 also expressly provides that a presumption of paternity under these defined situations may be rebutted by (1) an adjudication under Subchapter G (of Chapter 160); or (2) the filing of a valid denial of paternity by a presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity. *Id.* § 160.204(b). The referenced Subchapter G, entitled "Proceeding to Adjudicate

6

Parentage," includes provisions for rebutting the presumption of paternity with the results of genetic testing. *See id.* § 160.631(b).

In contrast, nothing in the plain language of section 160.201(a)(1) refers to a ***rebuttable presumption*** of maternity when a woman gives birth to a child. *See id.* § 160.201(a)(1). If the Legislature had intended that giving birth creates merely a rebuttable presumption, it could have included such language, as it did relative to the provisions for establishing paternity. In fact, Chapter 160 also includes a definition for "Presumed father": "a man who, by operation of law under Section 160.204, is recognized as the father of a child until that status is rebutted or confirmed in a judicial proceeding." *Id.* § 160.102(13). There is no definition for, or recognition of, the term "presumed mother" in Chapter 160. *See id.* §§ 160.001–.763.

There is one exception under which a woman who gives birth to a child conceived via assisted reproductive technology is considered only a "gestational mother" and lacks parental rights. Subchapter I of Chapter 160 governs "Gestational Agreements." *See id.* §§ 160.751–.763. A woman and "the intended parents" may enter into a written agreement whereby the woman will give birth to a child conceived via assisted reproduction, using the egg of the intended mother or another donor, and the woman relinquishes all parental rights. *See id.* §§ 160.751–.754. To be enforceable, the gestational agreement must satisfy certain requirements and be validated by a court. *See id.* §§ 160.754–.756, .762. Subchapter I "controls over any other law with respect to a child born under" such a gestational agreement. *Id.* § 160.752(b). More specifically, Subchapter I provides that in the event of a validated gestational agreement, the mother-child relationship exists by an adjudication confirming the woman as parent, regardless of the fact that the gestational mother gave birth. *Id.* § 160.753(a). In the present

7

case, it is undisputed there was no agreement satisfying Subchapter I. Further, there could have been no such agreement because the intended parents must be a married couple, *see id.* § 160.754(b), and McMurrey was not married at any relevant times.

Subchapter I demonstrates that when the Legislature chose to override section 160.201(a)(1) and define a situation in which a woman who gives birth to a child is not the mother, it expressly did so. Subchapter I would be rendered meaningless if, absent an agreement satisfying that subchapter, the genetic father of a child conceived via assisted reproductive technology could obtain a declaration that the woman who gave birth is not the mother based on genetics. In effect, McMurrey attempts to create a further exception to section 160.201(a)(1) and enforce a purportedly informal "gestational agreement" that does not satisfy Subchapter I. Chapter 160 does include a provision ensuring that an unmarried man who provides sperm for assisted reproduction by an unmarried woman is the father of a resulting child. *See id.* § 160.7031. However, neither that provision nor any other portion of Chapter 160 permits the man to exclude the woman who gave birth as the mother even if a donor egg was used and she is not genetically related to the child. *See generally id.* §§ 160.001–.763.

McMurrey relies heavily on section 160.106, which is entitled "Determination of Maternity" and states: "The provisions of this chapter relating to the determination of paternity apply to a determination of maternity." *Id.* § 160.106. According to McMurrey, this "gender neutral mandate" can only mean that "maternity" must be substituted for "paternity" in the remainder of Chapter 160. Thus, McMurrey argues the provisions allowing the presumption of paternity to be rebutted by genetic testing also permit the "presumption" of maternity by giving birth to be rebutted by genetic testing. We disagree.

8

Construing section 160.106 as urged by McMurrey would conflict with section 160.201(a)(1), which does not create merely a rebuttable presumption. *See id.* § 160.201(a)(1). Generally, we are to construe statutes so as to harmonize with other relevant laws, if possible. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984). Section 160.106 may be harmonized with section 160.201(a)(1) without assigning to section 160.106 the construction urged by McMurrey.

Section 160.201 is entitled "**Establishment** of Parent-Child Relationship." Tex. Fam. Code Ann. § 160.201 (emphasis added). Section 160.106 does not state that the rules applicable to "**establishment**" of paternity also apply to "**establishment**" of maternity. *See id.* § 160.106. Rather, section 160.106 makes the provisions relating to "**determination**" of paternity applicable to "**determination**" of maternity. *Id.* (emphasis added). Because we must presume the Legislature carefully chose the words of a statute, we conclude it purposefully used "**determination**"—not "**establishment**"—in section 160.106.

At the outset, Chapter 160 defines "**Determination** of parentage" as "the establishment of the parent child relationship by the signing of a valid acknowledgement of paternity under [applicable provisions] or by an adjudication by a court." *Id.* § 160.102(5) (emphasis added). This provision does not define "Determination of parentage" to mean the situations establishing the parent-child relationship, as set forth in section 160.204. *See id.* Instead, in addition to an acknowledgement of paternity, "Determination of parentage" refers to the process of a court making an adjudication, when necessary to establish the parent-child relationship. *See id.* In this definition, the Legislature did not alter the underlying situations establishing the parent-child relationship that the court must apply when making the adjudication. *See id.* Accordingly, we construe section 160.106 to

9

mean that the procedures applicable to adjudicating paternity are equally applicable when it is necessary to adjudicate maternity. Section 160.106 does not mean that the situations establishing paternity, including that certain provisions are presumptions rebuttable by genetic testing, also apply to establishing maternity.

McMurrey argues that our construction of section 160.106 would render the provision meaningless because it is rare that adjudication of maternity would be necessary and the need would arise only when there is a Subchapter I gestational agreement. However, as long as there is any event that would trigger the need to adjudicate maternity, the Legislature had a reason to ensure application of uniform procedures. The Legislature did contemplate there are circumstances under which maternity may need to be adjudicated. Specifically, section 160.201 refers to establishment of maternity through adjudication. *Id.* § 160.201(a)(2). As McMurrey notes, such a circumstance would arise when a woman who did not give birth to a child is adjudicated the mother through the court's validation of an enforceable gestational agreement under Subchapter I. *See id.* §§ 160.751–.756, .762. Further, a circumstance may arise when genetic testing is necessary to adjudicate maternity. For example, Subchapter I provides, "If a person alleges that a child born of a gestational mother did not result from assisted reproduction, the court shall order that scientifically accepted parentage testing be conducted to determine the child's parentage." *Id.* § 160.760(c). Consequently, we perceive of a reason the Legislature included section 160.106, without intending that the situations establishing paternity also establish maternity.

In summary, we conclude the rule in section 160.201(a)(1) that the mother-child relationship is established by a woman giving birth is not rebuttable by the results of genetic testing. Accordingly, pursuant to section 160.201(a)(1), Close is the children's mother. We overrule McMurrey's first and second issues.

## B. Constitutional challenge

In his third issue, McMurrey suggests section 160.201(a)(1) is unconstitutional to the extent it provides that giving birth is conclusive on maternity rather than a rebuttable presumption. McMurrey contends the provision violates the Equal Rights Amendment to the Texas Constitution which provides, "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Tex. Const. art. I, § 3a. He argues the entire statutory scheme of Chapter 160 treats males and females differently by conclusively equating maternity with gestation while equating paternity with genetics. McMurrey notes that the only exception to the rule that the mother-child relationship is established by the woman giving birth is an enforceable gestational agreement under Subchapter I—which requires the intended parents to be a married couple. Thus, the crux of McMurrey's complaint is that a single woman may become the sole parent of a child but a single man may not be a sole parent, except via adoption. McMurrey requests we declare section 160.201(a)(1) unconstitutional as applied to him so that Close's giving birth will not be conclusive on maternity and, even as an unmarried man, McMurrey may be adjudicated as sole parent of the children.

We conclude that McMurrey waived this constitutional contention by failing to raise it in his motion for summary judgment or in response to Close's motion. "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). Therefore, we may not reverse the denial of a motion for summary judgment on a ground the movant failed to expressly present in the motion. *See Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 542 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We may not reverse the grant of a motion

for summary judgment on an issue the non-movant failed to expressly present in his response, although the non-movant may complain for the first time on appeal that the evidence is legally insufficient to support the summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979); *F & F Ranch v. Occidental Chem. Corp.*, No. 14-09-00901-CV, 2011 WL 1123402, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2011, no pet.) (mem. op.). Even constitutional challenges not expressly presented to the trial court by written motion, answer, or other response will not be considered on appeal as grounds for reversal. *Lynch v. Port of Houston Auth.*, 671 S.W.2d 954, 957 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

McMurrey did not challenge constitutionality of section 160.201(a)(1), or any portion of Chapter 160, in his motion for summary judgment or response to Close's motion. Nevertheless, McMurrey asserts he did not waive his challenge because the "constitutional implications posed by the issues presented were apparent within the context of the affirmative arguments asserted by [McMurrey] and the defensive theories lodged by [Close]." We disagree. In his motion and response to Close's motion, McMurrey asserted section 160.201(a)(1) is not conclusive and instead creates merely a rebuttable presumption of maternity. That assertion is different than his alternative appellate contention that section 160.201(a)(1) should be declared unconstitutional to the extent it is conclusive and not a rebuttable presumption. Accordingly, no constitutional challenge was encompassed in McMurrey's motion or response to Close's motion. *See Kaye v. Harris Cnty. Mun. Util. Dist. N. 9*, 866 S.W.2d 791, 795–96 (Tex. App.—Houston [14th Dist.] 1993, no writ) (holding non movant waived challenge to constitutionality of statute on which motion for summary judgment was based by failing to raise challenge in response to the motion); *Benson v. City of San Antonio*,

12

715 S.W.2d 143, 144–45 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (holding non movant waived challenge to constitutionality of city charter requiring notice of claim by failing to present constitutional challenge in response to motion for summary judgment asserting suit was barred by failure to give requisite notice).

McMurrey also contends he presented his constitutional arguments at a hearing on various motions (before the motions for summary judgment were filed) and the hearing on the motions for summary judgment. However, McMurrey was required to raise the issue in his **written** motion for summary judgment or in his **written** response to Close's motion. *See* Tex. R. Civ. P. 166a(c).

Alternatively, McMurrey maintains he may raise the constitutional argument for the first time on appeal because it involves fundamental error. In civil appeals, the fundamental-error doctrine is a narrow and limited exception to the procedural rules requiring parties to preserve error on their appellate complaints. *See In the Interest of B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). In light of the strong policy considerations favoring the preservation-of-error requirement, the Supreme Court of Texas has called the fundamental-error doctrine "a discredited doctrine." *See id.* At most, the doctrine applies when (1) the record shows on its face that the court rendering the judgment lacked jurisdiction, (2) the alleged error occurred in a juvenile delinquency case and falls within a category of error on which preservation of error is not required, or (3) when the error directly and adversely affects the interest of the public generally, as that interest is declared by a Texas statute or the Texas Constitution. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006); *In the Interest of B.L.D.*, 113 S.W.3d at 350–51.

McMurrey relies on the third situation, but he does not satisfy the fundamental-error standard. We decline to recognize any public interest adversely affected in denying McMurrey's request for a declaration that Close's giving birth

13

is not conclusive on maternity and that McMurrey, an unmarried man, may be adjudicated as sole parent of the children. Accordingly, we overrule McMurrey's third issue.

We affirm the trial court's orders denying McMurrey's motion for summary judgment, and granting Close's traditional motion for summary judgment, on McMurrey's request for a declaratory judgment that Close has no parental relationship with, or standing to pursue rights to, the children.

/s/     John Donovan
        Justice

Panel consists of Justices Christopher, McCally, and Donovan.