**Affirmed and Memorandum Opinion filed April 9, 2020.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-18-00850-CV

**E.S.F., Appellant**

**V.**

**D.J.F., Appellee**

**On Appeal from the County Court at Law**
**Austin County, Texas**
**Trial Court Cause No. 2016L-6652**

## M E M O R A N D U M   O P I N I O N

Mother E.S.F. filed for divorce from Father D.J.F.[1]  After a bench trial, the trial court signed a final decree of divorce.[2]  Mother appeals and challenges the trial court's appointment of Mother and Father as joint managing conservators as well as other evidentiary issues.  For the reasons below, we affirm.

---

[1] We use initials and pseudonyms to refer to appellant, appellee, and their children.  *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

[2] *See* Tex. Gov't Code Ann. § 25.0102(a) (giving Austin County Court at Law concurrent jurisdiction with district court in family law cases and proceedings).

BACKGROUND

Mother and Father were married in 1999 and have five children. Mother filed for divorce from Father in September 2016 and the parties proceeded to a bench trial. The trial court heard testimony from numerous witnesses addressing the parties' relationship, their relationships with their children, and their assets.

The trial court signed a final decree of divorce on August 30, 2018. The trial court appointed the parties as joint managing conservators of their four minor children, with Father retaining the right to designate the children's primary residence. The final decree of divorce also divided the parties' marital estate. The trial court signed additional findings of fact and conclusions of law on October 17, 2018. Mother timely appealed.

## ANALYSIS

Mother asserts four issues on appeal:

1. the trial court erred when it appointed the parties as joint managing conservators because credible evidence was presented showing Father has a history or pattern of committing physical and sexual abuse;

2. the trial court erred when it failed to *sua sponte* admit certain evidence;

3. the trial court erred when it permitted testimony from Father's real estate expert, James Havel; and

4. the trial court erred when it permitted Father to testify as to the value of the marital home.

We address these issues below.

## I.     Joint Managing Conservators

In the final divorce decree, the trial court appointed Mother and Father as joint managing conservators. Challenging this appointment, Mother relies on

Texas Family Code section 153.004(b), which states, in relevant part:

> The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child . . . .

Tex. Fam. Code Ann. § 153.004(b). Mother argues the following evidence satisfies section 153.004(b)'s "credible evidence" showing: (1) testimony from several pre-trial hearings; (2) Father's testimony at trial regarding a prior confrontation with Mother; and (3) Father's invocation of the Fifth Amendment privilege against self-incrimination during certain pre-trial discovery that was admitted into evidence at trial.

## A.     Testimony from Pre-Trial Hearings

Citing testimony from several witnesses at four pre-trial hearings, Mother asserts that "credible evidence" was presented showing Father had a history or pattern of sexually abusing the children. Father asserts this evidence cannot be considered on appeal because the transcripts from the pre-trial hearings were not admitted into evidence at the bench trial.[3]

Before trial began, the trial court had the following discussion with the parties' attorneys:

The Court: All right. The parties have met in chambers and we have some agreements. In prior hearings we've heard testimony from Angela McCann, Cheryl Brown, Jessica Hernandez, Fiona Remko, Nolana Jalowy, and Ranger Jeff Wolf. Those transcripts have been prepared by Ms. Parker, and I think all parties have copies of those transcripts. I understand that those transcripts will be admitted, and so the Court can consider their testimony

---

[3] Transcripts of these hearings (as well as five additional pre-trial hearings) were included with the reporter's record.

3

> without them having to be recalled.
>
>        *             *             *
>
> The Court:   All right.  So those transcripts — now, I know the parties have received transcripts.  At some point we'll need to have, I guess, a transcript included in the record so we will make sure that that gets done as we proceed.

These transcripts were not admitted into evidence during the trial and are not included with the trial exhibits.

"In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence."  *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also In re R.N.Y.*, No. 14-14-00984-CV, 2015 WL 1928865, at *5 (Tex. App.—Houston [14th Dist.] Apr. 28, 2015, no pet.) (mem. op.) ("testimony from prior hearings that is not admitted into evidence at trial is not part of the evidence we may consider"); *In re M.C.G.*, 329 S.W.3d 674, 675 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Testimony from a prior hearing can be used at trial only if the testimony is admitted into evidence.").  Here, because the transcripts at issue were not admitted into evidence, the testimony therein cannot be used to challenge the trial court's appointment of the parties as joint managing conservators.

Pointing out that the parties "agreed" to the admission of the transcripts, Mother argues that no "formal process of admission is required."  But the cases Mother cites to support this contention are distinguishable and do not warrant a departure from the standards discussed above.

Mother cites *Texas Health Enterprises, Inc. v. Texas Department of Human Services*, 949 S.W.2d 313 (Tex. 1997) (per curiam), in which the supreme court concluded that the appellate court erroneously failed to file the underlying

administrative record even though the record "was not formally tendered as evidence." *Id.* at 313. Mother also relies on *In re G.M.*, No. 04-19-00080-CV, 2019 WL 3432088 (Tex. App.—San Antonio July 31, 2019, pet. denied) (mem. op.), in which the trial court considered video evidence that was not "actually admitted on the record." *Id.* at *2-3, *4 (Watkins, J., concurring), *6 (Martinez, J., dissenting). In both cases, the record left no doubt that the challenged evidence was reviewed and considered by the trial court in reaching its decision. *See Texas Health Enters., Inc.*, 949 S.W.2d at 314 ("the court's order affirming [the appellant's] decision le[ft] no doubt . . . that the court based its decision upon the administrative record"); *In re G.M.*, 2019 WL 3432088, at *2 n.1 (as the video was played in open court, the trial court stated "[m]ake a note for the record . . . that we're watching the video that's been offered as State's Exhibit 1"; at the conclusion of the video, the trial court stated, "Very well. The Court has seen the video."). Moreover, the supreme court's decision in *Texas Health Enterprises, Inc.* also was based on a specific provision in the Administrative Procedure Act (*see* 949 S.W.2d at 313), while in *In re G.M.*, two separate writings disagreed with the majority opinion's conclusion that the video evidence could be properly considered by the court.

Unlike these cases, here there is no indication that the trial court reviewed the transcripts from the four pre-trial hearings as part of its ruling. Neither the hearings nor the transcripts are mentioned or cited in the trial court's final decree of divorce or in its findings of fact and conclusions of law. Further, the trial court explicitly stated that "[a]t some point we'll need to have . . . a transcript included in the record." This was not completed, and the transcripts at issue were not included with the trial record.

Because transcripts from the pre-trial hearings were not admitted into

evidence at the bench trial, testimony from those hearings cannot be used to challenge the trial court's appointment of Mother and Father as joint managing conservators.

### B.    Father's Testimony at Trial

Citing portions of Father's testimony at trial, Mother argues this testimony "constitutes a judicial admission of the underlying physical abuse" and precludes the appointment of Mother and Father as joint managing conservators.

When determining issues of conservatorship, the best interest of the children is the primary consideration. *See* Tex. Fam. Code Ann. § 153.002. The trial court is afforded great discretion when making these determinations and we review its decision for an abuse of that discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Baker v. Baker*, 469 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Baker*, 469 S.W.3d at 273. The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The law presumes that the appointment of both parents as joint managing conservators is in the best interest of the children. *See* Tex. Fam. Code Ann. § 153.131(b). But the trial court may not appoint the parents as joint managing conservators if "credible evidence is presented of a history or pattern" of physical abuse by one parent directed against the other parent. *Id.* at § 153.004(b).

When, as here, the trial court is the factfinder, it is the sole judge of the weight and credibility of the evidence; if it does not find ***credible*** evidence of a history or pattern of domestic violence, it is not bound by section 153.004. *In re*

*Marriage of Harrison*, 557 S.W.3d 99, 128 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Although a single incident of physical violence could constitute a history of physical abuse, the trial court also may consider the participants' explanations of what occurred and the amount of time that elapsed since the incident in question in determining whether a "history or pattern" of abuse was shown. *See id.*; *see also Hinojosa v. Hinojosa*, No. 14-11-00989-CV, 2013 WL 1437718, at *3 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, no pet.) (mem. op.).

Here, Mother's argument rests on Father's testimony describing a November 2014 incident where he "physically" hurt Mother. Father said the altercation began when Mother brought up Father's failure to answer a phone call she made to him earlier in the day. According to Father, Mother got "angry" at his response and "ran at [him] from the kitchen" while "grabbing a pillow." Father said Mother "jumped onto [his] body" and "put[] the pillow over [his] face" while she "planted" her knees in his ribs and abdomen. Father testified that Mother was "punching [him] on the top of [his] head with one of her hands while she attempted to smother [him] with a pillow." Father testified that he "threw [Mother] over the baby gate" and he fell on top of her. Father said Mother continued to grab and squeeze him and he punched her in stomach.

Mother argues that this testimony is a "judicial admission" that establishes as a matter of law a history or pattern of physical abuse. A judicial admission is a formal waiver of proof usually found in pleadings or the parties' stipulations; a quasi-admission, in contrast, is a testimonial declaration contrary to a party's position. *See Aguirre v. Vasquez*, 225 S.W.3d 744, 756 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Whereas a judicial admission is conclusive on the party making it, a quasi-admission "is merely some evidence, and not conclusive, upon

7

the person making the admission." *Id.* To the extent Father's testimony describing the November 2014 incident was contrary to his position, it is a testimonial quasi-admission that is not conclusive with respect to the trial court's conservatorship determination. *See, e.g., Laday v. Pedraza*, No. 14-13-00638-CV, 2015 WL 545535, at *2 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015, pet. denied) (mem. op.).

Presuming for the sake of argument that Father's testimony constitutes a "judicial admission," Father's description of the November 2014 incident does not render the trial court's joint managing conservatorship appointment an abuse of discretion. Courts previously have held that a single incident of family violence does not necessarily preclude a joint conservatorship where the challenged conservator testifies that the alleged violence was in self-defense or in response to other acts of aggression and a factfinder could rely upon its own credibility determination to find same. *See In re Marriage of Harrison*, 557 S.W.3d at 128 (mother asserted that father's "no contest" plea to an assault charge precluded joint conservatorship; concluding the trial court's appointment was not an abuse of discretion, this court noted that, according to father, the incident in question began when mother engaged him in a verbal dispute and shoved him, after which father shoved her back); *see also* Tex. Fam. Code Ann. § 71.004 (defining "family violence" to exclude "defensive measures to protect oneself"); *In re L.G.K.S.*, No. 12-18-00178-CV, 2019 WL 4462693, at *5 (Tex. App.—Tyler Sept. 18, 2019, no pet.) (mem. op.) (joint conservatorship was not an abuse of discretion even though father "admit[ted] to pushing [mother] on two separate occasions during arguments"); and *In re Marriage of McLain & Baker-McLain*, No. 07-06-0143-CV, 2007 WL 2915409, at *2 (Tex. App.—Amarillo Oct. 8, 2007, no pet.) (mem. op.) (joint conservatorship was not an abuse of discretion when father "denied

8

having ever touched [mother] except in self defense"). In the underlying proceeding, Father testified that he threw Mother over the baby gate and punched her only after she climbed on top of him, smothered him with a pillow, and punched him in the head. Considering the attendant circumstances as described by Father, it was within the trial court's discretion to determine that this incident did not preclude the parties from acting in a joint parenting role. *See Gillespie*, 644 S.W.2d at 451; *Baker*, 469 S.W.3d at 273.

### C. Father's Invocation of the Fifth Amendment

Mother asserts that Father's invocation of the Fifth Amendment right against self-incrimination in response to certain questions constitutes "credible evidence" of sexual abuse against the children. *See* U.S. Const. amend. V (a person may not be compelled to testify or give evidence against himself); *see also Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995) (the Fifth Amendment can be asserted in both civil and criminal cases when the respondent's answer may subject the respondent to criminal responsibility). Mother points out that Father pleaded the Fifth Amendment in response to questioning (1) at a pre-trial hearing, and (2) in certain pre-trial discovery that was admitted into evidence at trial.

As discussed above, the transcripts from the pre-trial hearings were not admitted into evidence at trial. Accordingly, they are not part of the evidence we may consider on appeal. *See In re R.N.Y.*, 2015 WL 1928865, at *5; *Guyton*, 332 S.W.3d at 693; *In re M.C.G.*, 329 S.W.3d at 675.

Mother's argument also rests on Father's invocation of the Fifth Amendment during his interview with Texas Ranger Jeffrey Wolf. Ranger Wolf interviewed Father as part of an investigation conducted by the Austin County Sheriff's Office at the request of the Child Protective Services. Father pleaded the Fifth

9

Amendment in response to certain questions regarding allegations that he sexually abused the children.

In a civil case, the factfinder may draw reasonable inferences from a party's assertion of the privilege against self-incrimination. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Tex. Dep't of Pub. Safety Officers Ass'n*, 897 S.W.2d at 763. But a "claim of privilege is not a substitute for relevant evidence." *United States v. Rylander*, 460 U.S. 752, 761 (1983). Mother does not point to any other evidence at trial showing that Father sexually abused the children. Without more, any inferences the trial court may have drawn from Father's invocation of the privilege during his interview with Ranger Wolf do not constitute "credible evidence" that would foreclose a joint conservatorship. *See, e.g., Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied); *Blake v. Dorado*, 211 S.W.3d 429, 433-34 (Tex. App.—El Paso 2006, no pet.).

We overrule Mother's first issue.

## II.     *Sue Sponte* Admission of Evidence

Prior to trial, the parties' minor children underwent a recorded forensic interview as part of an investigation into allegations of abuse. Neither party offered the recorded interview as evidence at trial. Mother asserts that, because numerous witnesses referenced the recorded interview and offered "conflicting accounts" of its content, "the trial court should have *sua sponte* had the [recorded interview] admitted into evidence" at trial. The failure to admit this evidence, Mother argues, constitutes fundamental error.

The fundamental error doctrine is a narrow and limited exception to the procedural rules requiring parties to preserve error on their appellate complaints. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). "In light of the strong policy considerations favoring the preservation of error requirement, the Supreme Court

10

of Texas has called the fundamental error doctrine 'a discredited doctrine.'" *In re M.M.M.*, 428 S.W.3d 389, 398 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (quoting *In re B.L.D.*, 113 S.W.3d at 350). At most, the doctrine applies when (1) the record shows on its face that the court rendering the judgment lacked jurisdiction; (2) the alleged error occurred in a juvenile delinquency case and falls within a category of error that does not require preservation of error; or (3) when the error directly and adversely affects the public interest, as that interest is declared by a Texas statute or the Texas Constitution. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006); *In re B.L.D.*, 113 S.W.3d at 350-51; *In re M.M.M.*, 428 S.W.3d at 398.

Here, Mother does not cite any cases to support her contention that the trial court's alleged failure to *sua sponte* admit certain evidence constitutes fundamental error.[4] Mother also does not cite any case law or other authority to support her claim that the trial court can, on its own accord, admit evidence that was not offered by a party. We decline to sustain Mother's argument in the absence of any supporting authority, particularly in light of the fundamental error doctrine's "limited" reach. *In re B.L.D.*, 113 S.W.3d at 350.

We overrule Mother's second issue. *See* Tex. R. App. P. 33.1(a).

III. **Havel's Testimony**

In her third issue, Mother contends the trial court erred by permitting Havel to testify because (1) Father untimely designated Havel as an expert; and (2) Havel did not produce his expert report until twenty minutes before he took the stand at

---

[4] Instead, the cases Mother cites to support her argument on this point assert only that experts may not testify as to the credibility of child witnesses. *See In re G.M.P.*, 909 S.W.2d 198, 205 n.4 (Tex. App.—Houston [14th Dist.] 1995, no writ); *James v. Tex. Dep't of Human Servs.*, 836 S.W.2d 236, 243-44 (Tex. App.—Texarkana 1992, no writ); and *Ochs v. Martinez*, 789 S.W.2d 949, 958 (Tex. App.—San Antonio 1990, writ denied).

trial.

To preserve error regarding a party's failure to timely designate a testifying expert or produce the expert's report, the appellant must object and obtain a ruling in the trial court. *See* Tex. R. App. P. 33.1; *see also Expro Americas, LLC v. Sanguine Gas Expl., LLC*, 351 S.W.3d 915, 919-20 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Here, when Havel began to testify at trial, Mother's counsel objected to Havel's testimony only on grounds that Havel's expert report was not provided until shortly before Havel took the stand. Mother's counsel did not raise any objections regarding Father's failure to timely designate Havel as an expert. Therefore, any issues regarding the timeliness of Havel's designation are waived and we consider only Mother's challenge regarding the timeliness of Havel's expert report. *See* Tex. R. App. P. 33.1.

We review the trial court's evidentiary rulings for an abuse of discretion. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011); *Moral v. Mem'l Point Prop. Owners Ass'n, Inc.*, 410 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We reverse an evidentiary ruling only if it probably caused the rendition of an improper judgment. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *see also* Tex. R. App. P. 44.1(a)(1).

The Texas Rules of Civil Procedure require parties to amend and supplement written discovery regarding a testifying expert, including the provision of the expert's written reports. *See* Tex. R. Civ. P. 193.5, 194.2, 195.6. A party who fails to amend this written discovery in a timely manner may not introduce into evidence the material that was not timely disclosed unless the trial court finds that

12

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties. *Id*. 193.6(a). The burden of establishing good cause or lack of unfair surprise or prejudice is on the party seeking to introduce the evidence. *Id*. 193.6(b). A finding of good cause or lack of unfair surprise or prejudice must be supported by the record. *May v. Ticor Title Ins.*, 422 S.W.3d 93, 104 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Here, the record supports the trial court's implied finding that Mother was not unfairly prejudiced by the late disclosure of Havel's expert report. Responding to Mother's objection in the trial court, Father's attorney stated that Havel had "just finished his appraisal" and given it to Father's attorney that same day. Havel testified that he delivered his report on the day of his testimony because his mother had been ill. Overruling the objection from Mother's attorney, the trial court stated that, if Mother's attorney "need[ed] more time to review the report," the trial court would give him "all the time that [he] need[ed]," even if it required recalling Havel for additional questioning. These statements support the finding that the late disclosure of Havel's expert report did not unfairly prejudice Mother. Furthermore, the record does not show that Mother's attorney attempted to recall Havel for additional questioning.

We overrule Mother's third issue.

## IV. Father's Testimony Regarding the Value of the Marital Home

In her final issue, Mother asserts the trial court erred by permitting Father to testify regarding the value of the marital home.

Father testified several times during trial that he valued the marital home at

$250,000.  Mother did not object to any of Father's testimony on this point.  As with the evidentiary objections discussed above, a party must object at trial when testimony is offered to preserve error for appellate review.  *See* Tex. R. App. P. 33.1; *see, e.g., Petroleum Workers Union of the Republic of Mex. v. Gomez*, 503 S.W.3d 9, 36 (Tex. App.—Houston [14th Dist.] 2016, no pet.).  Because Mother did not object to this evidence at trial, she cannot raise this issue for the first time on appeal.

We overrule Mother's fourth issue.

## CONCLUSION

We overrule Mother's issues on appeal and affirm the trial court's final decree of divorce.


/s/    Meagan Hassan
       Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.