**Reversed and Remanded in Part and Affirmed in Part and Memorandum Opinion filed January 25, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00638-CV

---

### MILTON JOVEL, Appellant

### V.

### KATHERINE BLANCO, Appellee

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-36036**

---

## MEMORANDUM OPINION

Appellant Milton Jovel challenges the trial court's ten-year protective order prohibiting him from, inter alia, contacting Katherine Blanco, or their daughter, M.J. (Mindy).[1] Jovel contends (1) the trial court committed fundamental error by

---

[1] Mindy is a pseudonym. Pursuant to Texas Rule of Appellate Procedure 9.8, we use a fictitious name to identify the minor in this case.

preventing him from presenting evidence; (2) the ten-year order is not supported by findings pursuant to the Family Code; (3) the order is inconsistent on its face; and (4) courts should apply a stricter burden of proof than preponderance of evidence in protective order cases. Concluding the trial court's order does not contain the required finding for a ten-year order and contains inconsistent provisions, we reverse and remand in part and affirm in part.

## BACKGROUND

Jovel (Father) and Blanco (Mother) had a relationship several years ago and produced a child, Mindy. According to Mother, when she became pregnant with Mindy, Father began verbally and physically abusing her. Mother described an incident in November 2015 when Father struck her in the face with an open hand. When Mother was eight to nine months' pregnant, Father "got upset, picked [her] up, and pushed [her] into a coffee table" hurting her back. After Mother locked the door to her apartment Father came back in through the balcony and threatened to destroy Mother's property. In 2016, after Mindy was born, Father beat Mother, choking her, biting her arm, and slamming her against furniture. Father's verbal abuse continued into 2017 prompting Mother to sue for sole custody of Mindy.

Mother obtained primary custody of Mindy in 2017. The parties had a parenting plan in place that allowed Father visitation with Mindy. The plan allowed Father visitation rights and permitted exchanges in public places. During one exchange Father refused to allow Mother to take Mindy and physically restrained her from taking her daughter. Mother testified that Father threatened violence against Mindy and stalked Mindy at school. Father contacted Mindy's school and threatened to report the school to local news and also threatened other parents. Mother testified that Father physically assaulted her in the child's presence. In May 2020, Father "forcefully pulled [Mindy] away" from Mother and verbally assaulted Mother.

2

Mother applied for a protective order against Father under Chapter 85 of the Family Code. During the evidentiary hearing Mother testified to the physical violence against her and her daughter. The trial court admitted photographs of Mother, which reflected bruising and abrasions from Father's physical abuse. She further testified that Father had been intimidating to school staff and other parents.

Father testified at the evidentiary hearing and described himself as a "very involved father" who went to prenatal visits and purchased supplies for the baby before she was born. Father denied any verbal or physical abuse. Father was asked about verbal or physical threats Mother made to him. The trial court disallowed the testimony as irrelevant to Mother's application for protective order. Father denied threatening school staff, but testified that he went to Mindy's school to "exercise [his] legal rights."

When Father was asked to explain the photographs of Mother's bruises and abrasions Father testified that Mother was the aggressor, and they were both physically violent with each other. Father admitted the parties had been physically abusive while exchanging Mindy for visitation, but testified that Mother was always the aggressor. As a result of one of these incidents Father sought a protective order from Mother. Father did not obtain a protective order, but as a result of that filing, the parties agreed to exchange Mindy at a public location.

The trial court found that Mother and Father were "members of the same family or household or previously involved in a dating relationship." The court further found that family violence had occurred and was likely to occur in the future. The court found a protective order was necessary for the safety and welfare of the applicant and prohibited Father from:

- Physically harming Mother and Mindy;
- Communicating directly with Mother except through an attorney

3

or person appointed by the court;

- Communicating a threat through any person to Mother and Mindy;

- Going to or near the residence or place of employment of Mother;

- Coming with 200 feet of Mother's church;

- Possessing a firearm; and

- Engaging in conduct directed specifically toward Mother and Mindy designed to harass, annoy, alarm, abuse, torment, or embarrass Mother and Mindy.

The trial court further required Father to register for the SAFE exchange program through Harris County's Domestic Relations Office. The trial court described the order as a "quasi no contact protective order." The trial court explained to both parties that "quasi no contact" meant that Mother and Father could communicate through a program called "Talking Parents" and they could only communicate about the child. This appeal followed.

## ISSUES ON APPEAL

In four issues Father asserts (1) the trial court committed fundamental error when it prevented him from testifying as to his "defensive measures"; (2) the trial court erred in ordering a ten-year duration for the protective order without making statutorily required findings; (3) the order is "void for vagueness" as a no-contact order when it permits texts and exchanges for custody through the SAFE program; and (4) the burden of proof for protective orders is "fatally flawed." Mother did not file a responsive brief in this court.

Father does not challenge the sufficiency of the evidence to support the protective order, i.e., he does not challenge the trial court's findings that family violence has occurred and is likely to occur in the future. *See* Tex. Fam. Code §§

4

81.001, 85.001.

## I.    Protective Orders

A court shall render a protective order as provided by section 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code § 81.001; *see id.* § 85.001(a) ("At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence has occurred; and (2) family violence is likely to occur in the future."). Given the remedial nature of the Family Code's protective order provisions, courts broadly construe its provisions to effectuate its "humanitarian and preventative purposes." *Rodriguez v. Doe*, 614 S.W.3d 380, 385 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).

When the trial court acts as a factfinder, we generally review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *3 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.). In this case, however, Father has not challenged the legal and factual sufficiency of the evidence to support the trial court's findings on family violence. We therefore address the issues raised by Father.

## II.    Fundamental Error

In Father's first issue he asserts the trial court committed fundamental error by not allowing Father to testify about "defensive measures" in his altercations with Mother. Father admittedly did not object to the exclusion of evidence, nor did he submit an offer of proof showing how he would have testified.

5

To show that the trial court abused its discretion in excluding evidence, a complaining party must preserve error by actually offering the evidence and obtaining an adverse ruling from the court. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *In re Marriage of Harrison*, 557 S.W.3d 99, 121 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Further, once a proponent secures an exclusionary ruling, he must preserve the evidence in the record by an offer of proof to complain of the exclusion on appeal. Tex. R. Evid. 103(a), (b); *In re Marriage of Rangel & Tovias-Rangel*, 580 S.W.3d 675, 679–80 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Father did not preserve error in the exclusion of evidence in the trial court. Except for fundamental error, we are not authorized to consider issues not properly raised by the parties in the trial court. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Father argues that the trial court committed fundamental error in excluding his testimony.

The fundamental error doctrine is a narrow and limited exception to the procedural rules requiring parties to preserve error on their appellate complaints. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). "In light of the strong policy considerations favoring the preservation of error requirement, the Supreme Court of Texas has called the fundamental error doctrine 'a discredited doctrine.'" *In re M.M.M.*, 428 S.W.3d 389, 398 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (quoting *In re B.L.D.*, 113 S.W.3d at 350). At most, the doctrine applies when (1) the record shows on its face that the court rendering the judgment lacked jurisdiction; (2) the alleged error occurred in a juvenile delinquency case and falls within a category of error that does not require preservation of error; or (3) when the error directly and adversely affects the public interest, as that interest is declared by a Texas statute or the Texas Constitution. *See Mack Trucks*, 206 S.W.3d at 577; *In re B.L.D.*, 113 S.W.3d at 350–51; *E.S.F. v. D.J.F.*, No. 14-18-00850-CV, 2020 WL

6

1808907, at *5 (Tex. App.—Houston [14th Dist.] Apr. 9, 2020, pet. denied) (mem. op.).

The alleged error in Father's first issue does not fall within any of the three categories for fundamental error, and Father does not argue otherwise. The complaint Father asserts in his first issue does not constitute fundamental error. *See Mack Trucks*, 206 S.W.3d at 577 (holding trial court's refusal to receive additional evidence and reconsider its ruling was not fundamental error). Because the trial court's alleged erroneous exclusion of evidence does not fall within any category for fundamental error, we overrule Father's first issue.

## III. Duration of Protective Order

In Father's second issue he asserts the ten-year duration of the protective order is not supported by findings required by the Family Code. The protective order stated that it was to continue in effect for ten years. In Father's motion for new trial he preserved this issue by asserting the trial court erred in rendering a protective order for ten years.

Section 85.025 of the Family Code provides that the duration of a protective order is two years unless the court finds that the person who is the subject of the protective order:

> (1) committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense;
>
> (2) caused serious bodily injury to the applicant or a member of the applicant's family or household; or
>
> (3) was the subject of two or more previous protective orders rendered:
>
> > (A) to protect the person on whose behalf the current protective order is sought; and

7

(B) after a finding by the court that the subject of the protective order:

(i) has committed family violence; and

(ii) is likely to commit family violence in the future.

Tex. Fam. Code § 85.025(a-1).

Section 85.001(d) provides that if a court renders a protective order for a period of more than two years, the court must include in the order a finding described by Section 85.025(a-1). Tex. Fam. Code § 85.001(d); *Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 669 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding that finding in the judgment is required for protective order exceeding two years even if the evidence could support a longer duration of a protective order). Here, there is no finding in the order under section 85.025(a-1) to support a protective order lasting more than two years. We therefore sustain Father's second issue.

## IV.  Inconsistent Terms

In Father's third issue he asserts the protective order is void because it is described as a "no-contact order" but permits contact through the SAFE exchange program when exchanging the child for visitation. Father preserved this issue in his motion for new trial in which he asserted the protective order was "irreconcilably inconsistent."

The protective order prohibits Father "from coming within 200 feet of [Mother]'s place of residence . . . or [Mother]'s place of employment . . ., or any future residential and employment addresses of [Mother] and [Mindy.]" The order, in bold-faced type, states, "The Court further finds good cause for no contact as Ordered herein." Another provision of the order permits exchange of Mindy for visitation through the Harris County Domestic Relations Office SAFE exchange program.

8

At the end of the hearing on the protective order, the trial court explained that the order was intended to be "quasi no contact":

> Okay. When I mean quasi no contact, what I mean is what I explained a while ago. [Father], you can not have any contact with [Mother] except through Talking Parents and it is only about the child. You are not allowed to discuss this protective order or anything else regarding your relationship with her. It is only to ask about the child.
>
> I am changing the pickup and the dropoff. I'm going to make it a — through the SAFE exchange program through the Harris County Domestic Relations Office. You are ordered to contact the Harris County Domestic Relations Office and sign up for the SAFE exchange program.

A judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). The protective order's prohibition of contact with Mother and Mindy effectively terminates Father's rights to possession and access of the child while at the same time permitting supervised visitation with the child. We conclude that the protective order contains internally conflicting provisions such that ministerial officers could not execute it "without ascertainment of facts not therein stated." *See id.*

While the trial court explained that the protective order was intended to allow "quasi contact," the face of the order does not except supervised visitation through the SAFE program from the prohibition of contact with Mother and Mindy. We hold that the trial court erred by issuing an order prohibiting Father from being within 200 feet of Mother and Mindy and permitting him supervised visitation with the child without indicating in the order how those provisions should be reconciled. *See Pruneda v. Granados*, No. 01-20-00043-CV, 2021 WL 2231267, at *11 (Tex.

9

App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.); *Lewis v. Yancy*, No. 01-19-00348-CV, 2020 WL 7251448, at *8 (Tex. App.—Houston [1st Dist.] Dec. 10, 2020, no pet.) (mem. op.); *see also Copeland v. Copeland*, No. 05-18-01431-CV, 2020 WL 4047969, at *7–8 (Tex. App.—Dallas July 20, 2020, no pet.) (mem. op.) (concluding that protective order that prohibited father from communicating with or being within 500 feet of children, defined as "protected persons" in order, but that also provided for father's supervised possession of or access to the children, contained internally conflicting provisions).

Father argues that the inconsistencies in the protective order render the order void under the authority of *Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). As our sister court acknowledged, "*Ex parte Slavin* supports the proposition that a contempt order based on an unenforceable decree is void; it does not hold that the underlying order is void." *Pruneda*, 2021 WL 2231267 at *11. We agree with the court in *Pruneda* that this argument is unavailing. Although Father could be exposed to the possibility of contempt for violating the protective order, he has not been held in contempt. When, as here, a protective order contains internally inconsistent provisions, the appropriate disposition is to remand the case to the trial court for further proceedings, during which time the trial court may resolve the inconsistency. *Id.*

## IV.    Burden of Proof

In Father's fourth issue, he asserts the burden of proof required to obtain a protective order is "fatally flawed." Father argues that because a protective order may infringe on certain constitutionally protected rights, the trial court should have applied a clear-and-convincing burden of proof rather than a preponderance-of-the-evidence burden.

Father did not preserve this issue for our review by asking the trial court to apply a higher burden of proof. *See* Tex. R. App. P. 33.1. In any event, the Dallas

Court of Appeals considered and rejected similar arguments. *See Roper v. Jolliffe*, 493 S.W.3d 624, 636–38 (Tex. App.–Dallas 2015, pet. denied). In *Roper*, the court determined that the interests at stake in a protective order proceeding "do not equate to cases that require proof by clear and convincing evidence, such as the involuntary termination of parental rights or commitment for mental illness." *Id*. at 638. This court has also considered and rejected an assertion that protective orders should be subjected to a higher burden of proof. *See Caballero*, 2017 WL 6374724, at \*5. We overrule Father's fourth issue.

## CONCLUSION

We reverse the portions of the trial court's protective order that extend the effective period of the order beyond two years and that prohibit Father from being within 200 feet of Mother and Mindy, but also permit Father supervised visitation with the child. We remand this case to the trial court for further proceedings consistent with this opinion. We affirm the trial court's order in all other respects.

/s/    Jerry Zimmerer
       Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.