**Affirmed and Opinion filed July 30, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00419-CV

---

### GEORGE A. MORAN, JR. AND SUSAN K. MORAN, Appellants

### V.

### MEMORIAL POINT PROPERTY OWNERS ASSOCIATION, INC., Appellee

---

### On Appeal from the 411th District Court
### Polk County, Texas
### Trial Court Cause No. CIV 24596

---

## O P I N I O N

In this appeal from the trial court's judgment following a nonjury trial, the defendant property owners challenge the trial court's enforcement of a restrictive covenant. They contend that the restriction prohibiting their construction of a fence within twenty-five feet of the platted building set-back line was abandoned, waived, or ambiguous, and that the trial court additionally erred in admitting the

testimony of an undisclosed witness. We conclude that the restriction is unambiguous as a matter of law, and that the trial court did not err in concluding that the restriction had not been abandoned or waived. We further conclude that the Morans' appellate complaint about the trial court's evidentiary ruling does not comport with the objection that they made at trial, and thus, the issue presented was not preserved for review. We accordingly affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants George A. Moran Jr. and Susan K. Moran own a residence on two lots on Edgewater Drive in the Memorial Point Subdivision in Polk County, Texas. Among the restrictive covenants imposed by the subdivision's developer is the requirement that "[n]o fence, wall or hedge shall be built nearer to any street than the building set-back line indicated on [the] plat of this Subdivision filed in the County Clerk's Office of Polk County, Texas." According to this plat, Edgewater Drive was intended to be sixty feet wide, and the set-back line depicted on the plat is twenty-five feet from the edge of the street. In reality, however, the paved area of Edgewater Drive is only twenty feet wide.

To help in ensuring compliance with the restrictions, the developer required plans for improvements to be submitted for review. The developer's successor, appellee Memorial Point Property Owners Association, Inc. ("the Association"), performs this function through its architectural control committee.

In 2007, George sent the property-management company his proposal for constructing a fence on his property. He stated in his proposal that the fence would be designed and constructed in accordance with the covenants and restrictions applicable to his two lots. He attached a copy of a portion of the plat that he had revised to show the location of his driveway and the proposed location of the fence. The drawing includes the notations indicating that Edgewater Drive is sixty

2

feet wide, and George drew the location of the proposed fence just inside the set-back line. The request was forwarded to the Association, which formally approved the request.[1]

Before the fence was built, Gloria Barber, a member of the Association's board, noticed that the holes for the fence posts appeared to be too close to the street. She immediately emailed George, who responded that he believed the building set-back line was twenty-five feet from the center of the road.

The Morans refused to move the fence, and the Association sued to enforce the restriction. The case was tried without a jury. Evidence admitted at trial included a drawing that George provided to the company that built the fence. Unlike the drawing provided to the Association, the notation from the original plat showing the street to be sixty feet wide has been cut off, and George added notations indicating that (a) the distance between the center and the edge of the street was only ten feet, (b) the set-back line was fifteen feet from the street's edge, and (c) the fence was to be built thirty feet from the center of the street. In sum, the undisputed evidence showed that the Association had approved the construction of a fence twenty-five feet from the edge of the street *as platted*, but George's instructions to the construction company called for the fence to be built twenty feet from the edge of the street *as paved*.

Although George admitted at trial that the fence is built forward of the set-back line, the Morans argued that the restriction had been abandoned or its enforcement waived, or alternatively, that the restriction was ambiguous. The trial court ruled in the Association's favor and ordered the Morans to remove the

---

[1] The approval was a formality because no action had been taken on the request within thirty days after it was submitted, and thus, under the terms of the restrictive covenants, it already had been deemed approved.

3

portion of the fence that is forward of the set-back line as shown on the recorded plat. The trial court additionally ordered the Morans to pay the Association the attorney's fees it incurred in enforcing the restriction. At the Morans' request, the trial court also issued findings of fact and conclusions of law. The Morans' motion for a new trial was overruled by operation of law, and their appeal was transferred to this court.

## II. ISSUES PRESENTED

In their first issue, the Morans assert that the restriction was abandoned and its enforcement waived because the Association acquiesced in many prior violations of it. In their second issue, they contend that the restriction is ambiguous. They argue in their third issue that the trial court erred in allowing the Association to present trial testimony of an undisclosed expert.

## III. STANDARD OF REVIEW

In an appeal from the judgment rendered after a nonjury trial, we review the trial court's findings using the same standards of review that apply to a jury's verdict. *MBM Fin. Corp. v. Woodlands Operating Co.*, *L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). To analyze the legal sufficiency of the evidence supporting a finding, we review the record in the light most favorable to the factual findings, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law

4

or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. On the other hand, a factfinder "may not simply speculate that a particular inference arises from the evidence." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). If the evidence does no more than give rise to mere surmise or suspicion, then it is legally insufficient. *Id.*

To evaluate the factual sufficiency of the evidence, we consider and weigh all of the evidence in a neutral light and set aside the challenged finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). We defer to a trial court's factual findings if they are supported by evidence. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008). We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence clearly would support a different result. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998) (citing *Pool*, 715 S.W.2d at 634).

We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If the trial court rendered the proper judgment, we will not reverse it even if the trial court's conclusions of law are incorrect. *Id.*

## IV. ANALYSIS

In construing a restrictive covenant, we first determine whether the challenged restriction is ambiguous. *See Am. Golf Corp. v. Colburn*, 65 S.W.3d

277, 249–80 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We therefore begin our review by addressing the Morans' second issue.[2]

## A. Ambiguity

The Morans contend that the restrictive covenant is too ambiguous to enforce. *See Benard v. Humble*, 990 S.W.2d 929, 930 (Tex. App.—Beaumont 1999, pet. denied) ("[S]hould there exist ambiguity or doubt as to intent or meaning, the covenant is to be strictly construed against the party seeking to enforce same, and favorably toward the free and unrestricted use of the premises.") (citing *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987)). They assert that (1) the Association generally has measured the set-back line from the existing street rather than from a survey; (2) some property owners and former Association board members consider the restriction to be ambiguous; and (3) the words "hedge," "wall," and "fence" are ambiguous. In support of these assertions, the Morans cite evidence concerning the way different property owners or board members have interpreted or applied the provision.

This approach fails because the determination that a restrictive covenant is ambiguous is not a question of fact; it is a question of law. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). A covenant is not ambiguous simply because there may be disagreements about its interpretation. *Air Park-Dall. Zoning Comm. v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex. App.—Dallas 2003, no pet.). Rather, a covenant is ambiguous only if it is susceptible to more than one reasonable interpretation. *See Pilarcik*, 966 S.W.2d at 478. If it can be given a definite or certain legal meaning, then it is

---

[2] Because this case was transferred to this court from the Ninth Court of Appeals, we decide the case in accordance with that court's precedent to the extent of any conflict with our own precedent. *See* TEX. R. APP. P. 41.3; *Valdez v. Robertson*, No. 14-10-00323-CV, 2011 WL 2566277, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2011, no pet.) (mem. op.).

6

unambiguous. *Id.* To make this determination, a court must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement. *Id.* We liberally construe the covenant's language to ensure that its provisions are given effect. *Benard*, 990 S.W.2d at 930 (citing TEX. PROP. CODE ANN. § 202.003(a) (West 2007)). We will give the restriction's language its plain grammatical meaning unless doing so would defeat the parties' intentions as evidenced clearly in other parts of the document. *Moore v. Smith*, 443 S.W.2d 552, 555 (Tex. 1969).

The restriction at issue unambiguously describes the location of the applicable set-back line: it is "the building set-back line indicated on [the] plat of this Subdivision filed in the County Clerk's Office of Polk County, Texas." The plat clearly shows this line's location twenty-five feet from the edge of the platted street, which is sixty feet wide. The fact that only twenty feet of the street's platted width has actually been paved does not render the set-back line's location ambiguous. *See State v. NICO-WF1, L.L.C.*, 384 S.W.3d 818, 821, 823 (Tex. 2012) (explaining that "a street includes the whole width of the public right of way" and "includes portions not previously used").

The restriction also identifies the items—fences, walls, and hedges—that must be behind this set-back line. We give these words their commonly accepted meaning. *See Air Park-Dall.*, 109 S.W.3d at 909. A "fence" is "a barrier intended to prevent escape or intrusion or to mark a boundary; [especially] such a barrier made of posts and wire or boards." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 456 (1991). A "wall" can include "a masonry fence around a garden, park, or estate" or "a structure that serves to hold back pressure (as of water or sliding earth)." *Id.* at 1326. A "hedge" is commonly defined as "a fence or boundary formed by a dense row of shrubs or low trees." *Id.* at 561.

7

We conclude that the restriction is unambiguously directed to the placement of a boundary or barrier within twenty-five feet of the edge of the platted street, regardless of whether the barrier is made of masonry, boards, wire, or densely planted shrubbery. We therefore overrule the Morans' second issue.

## B.    Abandonment and Waiver

To determine whether a restrictive covenant has been abandoned or its enforcement waived, we consider such factors as "the number, nature, and severity of the existing violations, any prior enforcements of the restriction, and whether it is still possible to realize to a substantial degree of the benefits of the restriction despite the violations." *Architectural Control Comm. of Oak Terrace Estates v. McCormick*, No. 09-10-00495-CV, 2011 WL 5588733, at *1 (Tex. App.—Beaumont Nov. 17, 2011, no pet.) (mem. op.) (citing *Finkelstein v. Southhampton Civic Club*, 675 S.W.2d 271, 278 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). To defeat enforcement of the restrictive covenant at issue, the property user "'must prove that violations then existing are so great as to lead the mind of the "average man" to reasonably conclude that the restriction in question has been abandoned and its enforcement waived.'" *Martin v. Romero*, No. 09-10-00496-CV, 2011 WL 1304881, at *3 (Tex. App.—Beaumont Apr. 7, 2011, no pet.) (mem. op.) (quoting *Finkelstein*, 675 S.W.2d at 278).

The Morans argue that the particular restrictive covenant at issue here has been waived or abandoned, and they challenge the trial court's factual finding that (1) the Morans failed to conclusively establish the existence of other violations; or (2) the other alleged violations were "*de minimus* in light of the number of lots in the Subdivision" and would not lead an average person to reasonably conclude that the Association had abandoned the restriction or waived its enforcement. Because the Association admits to at least one other violation of the restriction, the evidence

is legally insufficient to support the portion of the finding in which the trial court stated that the Morans failed to conclusively establish the existence of other violations. In a civil case, however, we may not reverse the judgment due to the trial court's error of law unless the error probably (1) caused the rendition of an improper verdict, or (2) prevented the appellant from properly presenting the case on appeal. TEX. R. APP. P. 44.1(a). The Morans do not contend that the trial court's erroneous factual finding prevented them from properly presenting their case on appeal, and because the judgment could be supported by an alternative factual finding, it cannot be said that the error probably resulted in the rendition of an improper judgment if the alternative finding is supported by the evidence. We therefore determine if the evidence supports the trial court's alternative finding that the other alleged violations were not so great as to lead the average person to reasonably conclude that the restriction had been waived or abandoned.

The Morans assert that the evidence they introduced at trial shows a violation rate of at least 11.8% and possibly as high as 37.5%, depending on whether one considers all lots in the subdivision or only the developed lots on the street where the Morans' property is located. At trial, they introduced photographs and documents that they characterized as evidence of preexisting violations on approximately twenty properties, including a prior alleged violation on their own property. The Morans also introduced a "photograph index" assigning a number to each property that was the site of an alleged preexisting violation.[3] The Morans identified their own property as Photo No. 1, and argued at trial that a preexisting

---

[3] To enable the parties to identify each alleged violation to which we refer in our discussion, we have included footnotes identifying each by the photograph number that the Morans assigned to it. The number of properties and violations is not the same as the numbers stated in the index; some numbers correspond to more than one photograph and other numbers correspond to a single photograph in which more than one property or alleged violation is shown. In addition, the Morans have conceded that Photo No. 10 was taken in a reserve area to which the restrictive covenant does not apply.

9

hedge on their property and the alleged violations on other properties shown in Photo Nos. 2 through 20 establish that the violations of the restrictive covenant are so numerous, severe, and longstanding as to result in its waiver or abandonment.

### 1.    *Objects Other Than Fences, Walls, and Hedges*

The evidence is legally and factually sufficient to support the trial court's implied findings that in seven photographs allegedly showing violations of the deed restriction, the object depicted is not a "fence, wall, or hedge." Three are photographs of houses, which are subject to a different restrictive covenant.[4] One photograph is a picture of a set of lights and another is a photograph of a footbridge.[5] Two photographs are pictures of gardens.[6] In one of the photographs of a garden, a second alleged violation is visible on the adjacent property.[7] This alleged violation consists of some foliage partially camouflaging utility boxes at the front of a residential lot. As previously discussed, however, a "hedge" is commonly defined to consist of more than one plant. *See also* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 624 (3d ed. 1996) (defining "hedge" as "a row of closely planted shrubs, bushes, or trees forming a boundary or fence"). It is unclear from the photograph alone whether the foliage is a single plant or several; however, the violation is identified on the photographic index not as a hedge but as a "planting," and in his testimony George Moran referred to it as a "bush" and as a "plant." On this record, the evidence is legally and factually sufficient to support the trial court's implied finding that this was a single plant rather than a hedge.

---

[4] These were shown in Photo Nos. 12, 13, and 14.

[5] The lights are shown in Photo No. 19 and the footbridge is in Photo No. 20.

[6] These are in Photo Nos. 16 and 18.

[7] The Morans contend that Photo No. 18 shows two violations.

## 2.    *Speculative Violations*

Four of the remaining alleged violations consist of hedges, walls, or fences that George Moran testified were at least twenty-five feet from the edge of the paved street.[8]  As previously mentioned, however, the paved street is only twenty feet wide, whereas the restrictive covenant provides that the set-back line is twenty-five feet from the edge of the street as platted, and the plat shows a street sixty feet wide.  The edge of the paved street might or might not align with the edge of the platted street; thus, if the fence, wall, or hedge is located at least twenty-five feet from the edge of the paved street and the evidence does not show the location of the edge of the platted street, the existence and extent of any violation is a matter of speculation.  Because there is no evidence showing the distance between the platted street and the challenged hedge, wall, or fence on the property, the record does not establish that they are forward of the set-back line.

## 3.    *Alleged Violations of a Different Nature*

In determining whether a restriction has been abandoned or its enforcement waived, courts consider the nature of other alleged violations.  Of the alleged violations on the remaining properties, four are of a different nature than that of the fence erected by the Morans across the front of their property.  These alleged violations consist of fences enclosing utility equipment[9] or of walls, fences, and

---

[8] These include Photo Nos. 3, 4, 6, and 7.  Photo No. 3 shows a hedge and retaining wall that were said to be more than thirty-six feet from the edge of the paved street.  Photo No. 4 concerns a fence that was originally thirty-five feet from the edge of the paved street, but was later moved to be forty-five feet from the edge of the paved street.  The fence in Photo No. 6 is twenty-five feet from the edge of the paved street, and the retaining wall in Photo No. 7 is twenty-seven feet from the edge of the street.

[9] These are found on properties burdened by utility easements that are ten feet wide and that cross the front of the properties, but because the record does not show the distance between the platted street and the enclosures, it is unknown whether the enclosures pictured are located in the utility easements.

11

hedges that are perpendicular to the street. These instances are so unlike the erection of a fence along the street on the front of a residential lot that the average man would not reasonably conclude from these instances that the restriction barring the construction of such a fence was abandoned or its enforcement waived.

The evidence of the first of these alleged violations is a photograph of a chain-link fence around utility boxes that are bordered on one side by a street and on another side by a parking lot.[10] The photograph shows that the chain-link fence acts as a barrier between the utility boxes and the street and parking lot abutting the sides of the equipment. Photographs of the second such alleged violation show a board fence around the "MUD Pumping Station Utilities" at the edge of the paved area of a private street.[11] The photographs show that the paved area extends along two sides of the pumping station,[12] and just as in the first such alleged violation, the fence encloses and protects the utility equipment from vehicles traveling on the adjacent streets or parking areas. The alleged violations that consist of fences, walls, or hedges perpendicular to the street include a preexisting hedge on the Morans' property[13] and a retaining wall that separates a downward-sloping driveway from the yard of a neighboring lot at a higher elevation.[14]

Even if the average man could reasonable conclude from these alleged violations that the Association had waived enforcement of the deed restriction as to fences enclosing utility equipment or regarding fences, walls, and hedges

---

[10] This is identified as Photo No. 11.

[11] Collectively, these two photographs were identified as Photo No. 9.

[12] The paved area on one side of the fence is Heather Lane. It is not clear from the photographs whether the paved area on the adjacent side is a parking area or just the point at which Heather Line widens and terminates in a cul-de-sac.

[13] This is shown in the set of photographs identified as Photo No. 1.

[14] This is shown in Photo No. 8.

perpendicular to the street—questions that are not presented here—we conclude that the nature of these alleged violations is so different that the average man seeing these would not conclude that the restriction had been waived or abandoned as to fences, walls, or hedges across the front of a residential lot, i.e., those that are approximately parallel to the street.[15] *See Witmer v. McCarty*, 566 S.W.2d 102, 103–04 (Tex. Civ. App.—Beaumont 1978, no writ) (considering a restriction's purpose and concluding that "self-contained recreational trailers, 'barbeque trailers,' and boat trailers" did not violate a restriction "directed at immobilized 'trailers' designed and being used for residential purposes").

### 4. *Remaining Alleged Violations*

The Association conceded that a combined fence and hedge on another property violated the deed restriction, and the property owner complied with the Association's request to move it.[16] In addition, four of the Morans' set of twenty photographs depict fences, walls, or hedges parallel to the street. One such photograph shows a row of low trees planted close together so as to separate a yard from a drainage ditch.[17] Another shows a group of bushes or trees and is accompanied by a copy of a letter to the property owner in which the Association characterized the plants as a hedge and required their removal.[18] Evidence of an additional violation can be found in a photograph showing undeveloped lots into which low stakes have been driven.[19] Wire strung between the stakes forms a sort

---

[15] The Morans' property consists of two adjacent residential lots located in the curve of a street. Because the fence consists of interconnected straight panels, each of which is several feet wide, the fence is angular and does not exactly parallel the street.

[16] This is shown in the set of photographs identified as Photo No. 2.

[17] This is shown in Photo No. 17.

[18] The Association treated the plants shown in Photo No. 15 as a violation of the restriction.

[19] This is shown in Photo No. 5.

13

of low fence, and testimony at trial established that this was done to create a barrier to prevent people from driving across the property. Although it was not numbered as a separate violation, both parties also introduced photographs of a retaining wall that forms a right angle on a corner lot parallel to the intersecting streets.[20] These photographs arguably show an additional violation.

The trial court reasonably could have concluded that these five instances do not show such a severe and pervasive pattern of violations that an average person would conclude that the restriction had been abandoned or that its enforcement had been waived. Because the subdivision contains approximately 500 properties, about 110 of which have been developed, the above alleged violations represent 1.00% of the entire subdivision and 4.55% of developed properties. Even if one were to limit the area under review to the Morans' block as they suggest, there is only one violation on the thirty-six lots of Block 11, which represents a violation rate of just 2.78%. Such a rate does not support the Morans' argument that the Association abandoned or waived the restriction. *See Tanglewood Homes Ass'n, Inc. v. Henke*, 728 S.W.2d 39, 44 (holding that enforcement of restriction requiring the main residence to be built behind the building set-back line was not waived where the violations occurred in 5/56 of the homes—8.93%—and all violations were minor); *Stephenson v. Perlitz*, 537 S.W.2d 287, 289–90 (Tex. Civ. App.— Beaumont 1976, writ ref'd n.r.e.) (holding that there was no acquiescence in existing violations where evidence showed that less than 9% of lots in the entire subdivision had violations of the one-residence restriction). *See also Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 935–36 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Texas courts have found that violation rates ranging from 1.9% to 8.9% were not sufficient to support waiver and abandonment . . . ." (quoting *City*

---

[20] Photographs of this retaining wall are included in Photo No. 2 and in Plaintiff's Exhibit 17.

14

*of Houston v. Revels*, No. 14-99-00139-CV, 2001 WL 699546, at *2 (Tex. App.—Houston [14th Dist.] June 21, 2001, pet. denied) (not designated for publication))).

We overrule the Morans' first issue.

## C.     Admission of Undisclosed Witness's Testimony

Finally, the Morans contend that the trial court reversibly erred in permitting the Association's undisclosed expert witness to testify over their objection. We review the trial court's evidentiary rulings for abuse of discretion. *See Serv. Corp. Int'l*, 348 S.W.3d at 235; *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We will reverse an evidentiary ruling only if it probably caused the rendition of an improper judgment. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).

At trial, the Association introduced the testimony of surveyor Earline McLeod, and the trial court overruled the Morans' objection that the Association had not identified McLeod as a witness with knowledge of relevant facts. On appeal, however, the Morans challenge the trial court's ruling on the ground that the Association failed to designate McLeod as an expert witness. Because their appellate complaint does not comport with the objection they raised at trial, this issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a); *Jurek v. Herauf*, No. 14-07-00727-CV, 2009 WL 179204, at *2 (Tex. App.—Houston [14th Dist.] Jan. 27, 2009, no pet.) (objection in trial court that person was not identified as a fact witness does not preserve appellate complaint that person was not identified as an expert witness); *Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 347 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (same). We accordingly

15

overrule the Morans' third issue.

## V. CONCLUSION

The restrictive covenant at issue is unambiguous; the record supports the trial court's findings that the restriction has not been waived or abandoned; and the Morans' evidentiary complaint was not preserved for review. We therefore affirm the trial court's judgment.


/s/     Tracy Christopher
Justice


Panel consists of Justices Brown, Christopher, and McCally.