

IN THE
TENTH COURT OF APPEALS

No. 10-20-00037-CV

THE CITY OF CLEBURNE,

Appellant

v.

RT GENERAL, LLC,

Appellee

From the 413th District Court
Johnson County, Texas
Trial Court No. DC-C201900937

MEMORANDUM OPINION

In two issues, appellant, the City of Cleburne, challenges the trial court's denial of

its plea to the jurisdiction in favor of appellee, RT General, LLC. We affirm.

I. BACKGROUND

Beginning in early 2014, RT General began to occupy an aircraft hangar, Hangar

98, at the City's Municipal Airport. RT General uses this hangar as a facility for providing

aircraft storage, maintenance, and painting services to the public. Without a written

agreement with the City, RT General made over $300,000 in repairs, alterations, and improvements to Hangar 98.

On October 1, 2016, RT General and the City entered into an Airport Lease Agreement for the lease of Hangar 98. The term of the lease was for fifteen years, beginning on October 1, 2016. The lease also provided the following:

> In consideration of the improvements made, currently in progress, or to be made by Lessee, the value of which Lessor and Lessee expressly agree, is in excess of three hundred thousand dollars ($300,000), Lessor and Lessee have expressly agreed and do hereby expressly agree that Lessee shall have the right to occupy the Premises rent free for a period of ten (10) years during the Term of this Lease, and thus during the ten (10) year period of this Lease, no rental payments or fees shall be due to Lessor from Lessee.

The lease further provided that during the last five years of the primary term of the lease, RT General would pay the City $1,331.99 in monthly rent to the City.

All was well until May 24, 2018, when the City sent a letter to RT General notifying the company that it was in violation of the terms of the lease. Specifically, the City indicated that RT General needed to mow the grass, clean up the facility, throw some trash away, and provide the City with proof of insurance and permits from the Texas Commission on Environmental Quality.

As indicated in an email sent by counsel for RT General, the company quickly cured the violations outlined in the May 24, 2018 letter from the City. Notably, on May 31, 2018, counsel for the City sent RT General an email confirming "that the listed defaults

in the May 24, 2018 letter to RT General, LLC have been cured within the allotted time frame."

Thereafter, on November 22, 2019, counsel for the City sent RT General a letter stating that it must vacate the premises no later than December 13, 2019, at 5:00 p.m. In this eviction letter, the City, for the first time, informed RT General that the October 1, 2016 Airport Lease Agreement "has no legal effect since, among other factors, no consideration is specified in it and no consideration has been given by RT General for occupation of the premises." At the time of the eviction letter, RT General had six to seven airplanes "in different stages of repair and inspection." Many of the airplanes were not "airworthy" and would take a substantial amount of time to become "airworthy."

In response to the City's eviction letter, RT General filed an original petition and application for temporary restraining order, temporary injunction, and permanent injunction. In its original petition, RT General alleged a breach-of-contract claim for which specific performance was requested, a claim for anticipatory breach of contract, a claim for fraud, a declaratory-judgment action, and a takings/inverse condemnation claim. The City responded by filing an original answer denying the allegations in RT General's petition, as well as a plea to the jurisdiction arguing that the City is immune from suit and that there is no allegation of any waiver of governmental immunity. RT General filed a supplemental petition and a separate response addressing the governmental-immunity arguments made by the City in its plea to the jurisdiction.

The trial court conducted hearings on the City's plea to the jurisdiction, as well as RT General's requests for injunctive relief. At the conclusion of the hearings, the trial court denied the City's plea to the jurisdiction and granted RT General's request for a temporary injunction.[1] This accelerated, interlocutory appeal followed.

## II. GOVERNMENTAL IMMUNITY AND RT GENERAL'S CONTRACT CLAIMS

In its first issue, the City contends that the trial court erred by denying the City's plea to the jurisdiction based on governmental immunity to a suit for breach of contract. In particular, the City argues that the operation of a municipal airport is a governmental function for which the City is immune and that the lease did not state all essential terms with sufficient specificity to constitute a contract waiving the City's immunity.

### A. Standard of Review

A plea to the jurisdiction seeks dismissal of a case or a cause of action for lack of subject-matter jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction involves a court's power to hear a case or cause of action. *Tellez v. City of Socorro*, 226 S.W.3d 413, 413 (Tex. 2007) (per curiam).

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (internal quotations

---

[1] The City does not appear to complain about the trial court's temporary injunction in this appeal.

& citations omitted). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (emphasis in original).

## B.    Immunity

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability from money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Under the common-law doctrine of sovereign immunity, the State cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). Like sovereign immunity, governmental immunity affords similar protection to subdivisions of the State, including counties, cities, and school districts. *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.).

Governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity; and (2) immunity from suit, which bars suit against the entity altogether. *Id.* Immunity from suit deprives the court of subject-matter jurisdiction and is properly raised in a plea to the jurisdiction, whereas immunity from liability is asserted as an affirmative defense. *See Miranda*, 133 S.W.3d at 224; *see also Palasota*, 362 S.W.3d at 208. "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Natural Res.*

*Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). "If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed." *Id.* "Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *Id.*

## C.    Governmental or Proprietary Function?

In the trial court and on appeal, RT General contends that the City was acting in its proprietary capacity when entering into the lease agreement and, thus, is not immune from suit. "The governmental/proprietary dichotomy recognizes that immunity protects the governmental units from suits based on its performance of a governmental function but not a proprietary function." *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018). "[The] dichotomy is based on the reality that sovereign immunity is inherent in the State's sovereignty, and municipalities share that protection when they act as a branch of the State but not when they act in a proprietary, non-governmental capacity." *Id.* (internal quotations & citations omitted). As such, the performance of a proprietary function subjects a municipality "to the same duties and liabilities as those incurred by private persons and corporations." *Id.* (internal quotations & citations omitted).

In the context of contract claims, we must consider the relevant statutory provisions, as well as the common law, to determine the boundaries of governmental immunity. *Id.* at 147. To "aid our inquiry," we look to the definitions for governmental

and proprietary functions as set forth by the Legislature in the Texas Tort Claims Act ("TTCA"). *Id.* at 147-48; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215. Under the TTCA, governmental functions are defined as "those functions that are enjoined on a municipality by law and are given to it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). The TTCA provides a non-exhaustive list of thirty-six governmental functions, ranging from "police and fire protection and control" to "animal control." *Id.* § 101.0215(a)(1), (33); *see Wasson Interests, Ltd.*, 559 S.W.3d at 147.

On the other hand, the TTCA defines proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b). Such functions include "the operation and maintenance of a public utility," amusements owned and operated by the municipality," and "any activity that is abnormally dangerous or ultrahazardous." *Id.* § 101.0215(b)(1)-(3). "Proprietary functions, however, do not include any of the Act's enumerated governmental functions." *Wasson Interests, Ltd.*, 559 S.W.3d at 147. The Texas Supreme Court has also stated that a proprietary function may be treated as a governmental action if the proprietary action is "essential" to a governmental action. *Id.*, 559 S.W.3d at 153.

If the governmental action is not expressly listed in section 101.0215, courts must apply the general definitions of governmental and proprietary functions. *Id.* at 150. In

doing so, we consider: (1) whether the City's act of entering into the contract was mandatory or discretionary; (2) whether the contract was intended to benefit the general public or the City's residents; (3) whether the City was acting on the State's behalf or its own behalf; and (4) whether the City's act of entering into the contract "was sufficiently related to a governmental function to render the act governmental even if it would otherwise have been proprietary." *Id.*

## D. Discussion

In *Wasson Interests, Ltd.*, the Texas Supreme Court explained,

> We hold that, to determine whether governmental immunity applies to a breach-of-contract claim against a municipality, the proper inquiry is whether the municipality was engaged in a governmental or proprietary function when it entered into the contract, not when it allegedly breached the contract. Stated differently, the focus belongs on the nature of the contract, not the nature of the breach.

*Id.* at 149.

Although RT General focuses on the four factors the Texas Supreme Court articulated in *Wasson Interests, Ltd.* when the TTCA does not expressly enumerate a municipality's activity as governmental or proprietary, *see id.* at 150, we need not resort to those factors in our analysis. This is because the TTCA and the Texas Transportation Code expressly enumerate airports as a governmental function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10); TEX. TRANSP. CODE ANN. § 22.002(a)(2).

In *Dallas/Fort Worth International Airport Board v. Vizant Technologies, LLC*, the Texas Supreme Court explained that legislative enumerations of particular functions as governmental "aid our inquiry" in cases involving contract claims, as well as tort claims. 576 S.W.3d 362, 367 (Tex. 2019). The TTCA simply lists "airports" as a governmental function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10). However, section 22.002(a)(2) of the Texas Transportation Code identifies "the planning, acquisition, establishment, construction, improvement, equipping, maintenance, operation, regulation, protection, and policing of an airport" as "public and governmental functions, exercised for a public purpose, and matters of public necessity." TEX. TRANSP. CODE ANN. § 22.021(a)(2). Therefore, because the lease here involved the operation, construction, and maintenance of a hangar at the City's municipal airport, we hold that the City was performing a governmental function when it entered into the lease with RT General. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(10); TEX. TRANSP. CODE ANN. § 22.021(a)(2); *Vizant Techs., LLC*, 576 S.W.3d at 346-67 (holding that a local governmental entity was engaged in a governmental function in entering into a contract "to analyze [an] airport's payment-processing costs (including costs for processing credit-card payments) and to provide recommendations on how the airport could reduce those costs" because the contract was entered into "for the purpose of analyzing and reducing the airport's expenses"); *City of El Paso v. Viel*, 523 S.W.3d 876, 884-85 (Tex. App.—El Paso 2007, no pet.) (concluding that the City of El Paso engaged in a governmental function

when it leased a cargo warehouse at the El Paso International Airport to a tenant); *Hale v. City of Bonham*, 477 S.W.3d 452, 457 (Tex. App.—Texarkana 2015, pet. denied) (concluding that the City of Bonham engaged in a governmental function when it leased an airport hangar); *see also Elizabeth Benavides Elite Aviation, Inc. v. City of Laredo*, No. 04-19-00717-CV, 2020 Tex. App. LEXIS 3604, at **1-2, 8-9 (Tex. App.—San Antonio Apr. 29, 2020, no pet.) (mem. op.) (concluding that the City engaged in a governmental function where it entered into a lease agreement for a tract of land at the Laredo International Airport "for the purpose of storage and dispensing of aviation fuels for fueling aircraft" and that involved the construction of a concrete fuel containment pad for the installation of aboveground fuel storage tanks). This, however, does not conclude our analysis of this issue.

Section 271.152 of the Texas Local Government Code waives immunity to suit for qualifying local governmental entities for the purpose of adjudicating a claim for breach of contract entered into by the local governmental entity. TEX. LOC. GOV'T CODE ANN. § 271.152; *see Williams*, 353 S.W.3d at 134. For section 271.152's waiver of immunity to apply, the following elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by the Local Government Code; (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is defined by section 271.151(2) of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN.

§§ 271.151(2), 271.152; *see also Williams*, 353 S.W.3d at 134-35. For the purpose of waiving immunity under Chapter 271 of the Texas Local Government Code, a contract must be written and must state "the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Williams*, 353 S.W.3d at 135 (citing TEX. LOC. GOV'T CODE ANN. § 271.151(2)(B)).

In the trial court and on appeal, RT General argues that section 271.152 of the Texas Local Government Code operates to waive the City's immunity to suit in this case. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. The City counters that, although the first two elements of section 271.152 of the Texas Local Government Code are met, the lease lacks essential terms to constitute a contract under section 271.151(2) of the Texas Local Government Code. *See id.* § 271.151(2).

Although section 271.151(2) of the Texas Local Government Code does not define "essential terms," the Texas Supreme Court has held "essential terms" to include "the time of performance, the price to be paid, . . . [and] the service to be rendered." *Williams*, 353 S.W.3d at 138-39 (internal citations & quotations omitted); *see Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010); *see also City of Pearsall v. Tobias*, 533 S.W.3d 516, 523 (Tex. App.—San Antonio 2017, pet. denied).

In the instant case, the lease sets forth the parties, RT General and the City; outlines the obligations of both parties; and describes the property at issue, Hangar 98. The lease

also provides that the primary term shall be fifteen years beginning on October 1, 2016, and may be renewed once for an additional ten years. As mentioned earlier, the lease also provides the following payment terms:

> In consideration of the improvements made, currently in progress, or to be made by Lessee, the value of which Lessor and Lessee expressly agree, is in excess of three hundred thousand dollars ($300,000), Lessor and Lessee have expressly agreed and do hereby expressly agree that Lessee shall have the right to occupy the Premises rent free for a period of ten (10) years during the Term of this Lease, and thus during the ten (10) year period of this Lease, no rental payments or fees shall be due to Lessor from Lessee.

The lease further provided that during the last five years of the primary term of the lease, RT General would pay the City $1,331.99 in monthly rent to the City.

And finally, as outlined in the section of the lease entitled, "OBJECTS AND PURPOSE OF LEASE AGREEMENT," the services to be rendered are as follows:

> is to grant Lessee the right and privilege to use the leased premises for performing painting prep work for aircraft as well as spray application of paint until construction of Lessee's new facility is complete. Once construction of the new facility is completed[,] hangar 98 will be used as a maintenance and interior facility, avionics facility and aircraft storage facility.[2]

---

[2] Article 1, Section D of the Lease governs improvements on the lease premises and states that all improvements must conform with the Airport Master Plan Guidelines, the Airport Rules and Regulations, and the Minimum Standards. This section also outlines the process for the City to approve improvements to the lease premises. Article III, Section E addresses alterations and repairs to the premises, which, similar to the improvements described in Article 1, Section D, require City approval before construction. The language in these sections is not of the nature of an agreement to agree later. *See Cent. Tex. Micrographics v. Leal*, 908 S.W.2d 292, 297 (Tex. App.—San Antonio 1995, no writ) ("The general rules is that no enforceable contract exists 'where the agreement of the parties leaves an essential term for later determination *and it is never determined*.'" (quoting *Mooney v. Ingram*, 547 S.W.2d 314, 317 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.) (emphasis in original))). We therefore reject the City's contention that the lease language was not specific enough as to the essential terms.

Based on the foregoing, we conclude that the lease provided sufficient information to enable a court to determine "the time of performance, the price to be paid, . . . [and] the service to be rendered." *Williams*, 353 S.W.3d at 138-39; *see Kirby Lake Dev. Ltd.*, 320 S.W.3d at 838; *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) ("In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992))); *Tobias*, 533 S.W.3d at 523. Accordingly, we conclude that the lease provides the essential terms required by section 271.151 and *Williams*.[3] *See* TEX. LOC. GOV'T CODE ANN. § 271.151(1); *Williams*, 353 S.W.3d at 135. And as such, we further conclude that RT General has plead sufficient facts to establish a waiver of the City's immunity to suit under section 271.152 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(2), 271.152; *see also Williams*, 353 S.W.3d at 134-35. We overrule the City's first issue.

---

[3] In further support of our conclusion, we emphasize that the City operated as if the lease was a binding contract on the parties until the November 22, 2019 eviction letter. Indeed, as noted above, the City informed RT General of various violations of the lease on May 24, 2018, and then later confirmed that RT General had cured the violations listed in the May 24, 2018 email. If the contract was unenforceable, as the City posits, the City would have asserted that position earlier than the November 22, 2019 eviction letter, and it would not have sent the May 24, 2018 violation letter to RT General, acting as if the lease was indeed enforceable.

### III. GOVERNMENTAL IMMUNITY AND RT GENERAL'S INVERSE-CONDEMNATION, DECLARATORY-JUDGMENT, AND FRAUD CLAIMS

In its second issue, the City asserts that the trial court erred by denying the plea to the jurisdiction as to RT General's inverse-condemnation, declaratory-judgment, and fraud claims, which were purportedly nothing more than an attempt by RT General to recast barred breach-of-contract claims to avoid the City's immunity to suit. The City also argues that RT General's claims for damages are jurisdictionally barred under section 271.153 of the Local Government Code.[4]

### A. RT General's Declaratory-Judgment Claim

With regard to RT General's declaratory-judgment claim, the entirety of the City's argument is that RT General cannot seek a declaratory judgment to circumvent the City's alleged entitlement to immunity on RT General's breach-of-contract claim. Given that we have concluded that RT General established a waiver of the City's immunity to suit under section 271.152 of the Local Government Code, the premise of this argument lacks merit.

Nevertheless, the Texas Supreme Court has held that a party can bring a claim under the Uniform Declaratory Judgments Acts to determine the rights of parties to a

---

[4] We note that the City's second issue contains numerous complaints that are arguably multifarious. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific grounds of error). Courts may disregard any assignment of error that is multifarious. *Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.). However, courts may consider a multifarious issue if it can determine, with reasonable certainty, the error about which the appellant wants to complain. *Id.* To the extent that we can determine, with reasonable certainty, we will address all of the contentions made by the City.

contract subject to chapter 271 of the Local Government Code. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323, 328 (Tex. 2006) (holding immunity from suit was waived under chapter 271 of the Local Government Code as to a lawsuit for declaratory judgment seeking a determination of whether a loss was covered under an insurance policy); *see also Houston Cmty. College Sys. v. HV BTW, LP*, 589 S.W.3d 204, 218 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *City of Amarillo v. Nurek*, 546 S.W.3d 428, 434 (Tex. App.—Amarillo 2018, no pet.) ("A declaratory judgment action brought against the government that seeks a declaration of a party's rights and status under a statute is not barred by sovereign immunity." (citing *IT-Davy*, 74 S.W.3d at 859-60; *Bell v. City of Grand Prairie*, 221 S.W.3d 317, 324 (Tex. App.—Dallas 2007, no pet.) (op. on reh'g))).

## B. RT General's Inverse-Condemnation Claim

Regarding RT General's inverse-condemnation claim, the City alleged in its plea to the jurisdiction that it was acting pursuant to colorable contract rights and that a plaintiff may not recast a breach-of-contract claim against a governmental entity, which is immune from suit.

Like before, the City's reliance on immunity from RT General's breach-of-contract claim is unfounded given that we have concluded that section 271.152's waiver provision applies. Therefore, this argument lacks merit.

Further, it is well-settled that the Texas Constitution waives governmental immunity with respect to inverse-condemnation claims. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014) (citing *City of Dallas v. VSC, LLC,* 347 S.W.3d 231, 236 (Tex. 2011)).

## C.    RT General's Fraud Claim

Regarding RT General's fraud claim, the City alleged in its plea to the jurisdiction that RT General "failed to plead a waiver of immunity to support its fraud cause of action. As stated above, the City was engaged in a governmental function, and absent a waiver, is immune from suit.  This cause of action should be dismissed."  On appeal, the City argues that it is immune from suit for RT General's fraud claim because fraud is an intentional tort, and there is no waiver of governmental immunity for intentional-tort claims.

To preserve error, the objection made at trial must comport with the issue presented on appeal. *See Marin v. Mem'l Point Prop. Owners Ass'n, Inc.*, 410 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Basic Energy Serv., Inc. v. D-S-B Props., Inc.*, 367 S.W.3d 254, 264 (Tex. App.—Tyler 2011, no pet.).  As shown above, the argument made by the City in the trial court does not comport with that made on appeal. Accordingly, we conclude that the City did not preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a) (providing that, as a prerequisite for appellate review, the record

must show that the complaint was made to the trial court by timely request, objection, or motion); *see also Marin*, 410 S.W.3d at 407; *Basic Energy Serv., Inc.*, 367 S.W.3d at 264.

**D.    The City's Complaint Under Section 271.153 of the Texas Local Government Code**

Finally, with respect to the City's complaint that RT General's claims for damages are jurisdictionally barred under section 271.153 of the Texas Local Government Code, we note that no damages have been awarded and that we have determined that the City is not immune from suit as to RT General's claims.  As such, we cannot rule in favor of the City on this contention, as it would require us to issue an impermissible advisory opinion on the issue of damages.  *See* TEX. CONST. art. II, § 1, *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (noting that courts have no jurisdiction to issue advisory opinions).  We therefore overrule the City's second issue.

## IV.    CONCLUSION

Having overruled both of the City's issues on appeal, we affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray
     Justice Davis, and
     Justice Neill
(Chief Justice Gray dissenting with a note)*
Affirmed
Opinion delivered and filed December 16, 2020
[CV06]

*(Chief Justice Gray Dissents. A separate opinion will not issue. Chief Justice Gray notes, however, that because this is an interlocutory appeal of the denial of a plea to the jurisdiction, certain procedural protections that normally apply are inapposite. Chief Justice Gray notes that for the TCPRC Chapter 271 waiver of sovereign immunity to apply, the contract must be for goods or services to be provided to the governmental entity. Since it appears to Chief Justice Gray that the contract does not provide for any goods or services to be provided to the City of Cleburne, and because this is a jurisdictional issue, Chief Justice Gray would inquire into this issue and require the parties brief the issue before moving forward to a disposition of the appeal. On this record, finding no goods or services are alleged to be provided to the City of Cleburne under the contract, Chief Justice Gray would remand the proceeding to the trial court to give RTG the opportunity to replead and thus to allege the goods or services provided to the City of Cleburne under the contract, but nevertheless sustaining issue one. Regarding issue two, Chief Justice Gray would recognize that each of the claims challenged under that issue are merely creative pleading efforts that the SCOTX has expressly rejected as ways to circumvent the jurisdictional bar of sovereign immunity. Finally, because this is an interlocutory appeal of a plea to the jurisdiction, would recognize that the argument that RTG did not plead a basis to waive immunity for its fraud claim is properly before this Court. As to the fraud claim, Chief Justice Gray would thus hold that the trial court has no jurisdiction and because Chief Justice Gray sees no amendment that RTG could make to plead a claim for fraud by the City of Cleburne for which sovereign immunity has been waived, he would reverse and render a judgment of dismissal of that claim for this additional reason. Accordingly, Chief Justice Gray would sustain the City of Cleburne's first issue and reverse the trial court's judgment and remand the proceeding to the trial court with instructions that RTG may file an amended pleading to plead the goods or services that it contracted to provide to the City of Cleburne under the contract and if RTG is unable to do so, instruct the trial court to dismiss the proceeding, and further he would sustain the City of Cleburne's issue two and render judgment that the trial court does not have jurisdiction of those issue which are merely artful pleading

efforts to otherwise avoid sovereign immunity.  Because the Court affirms the trial courts denial of City of Cleburne's plea to the jurisdiction, Chief Justice Gray respectfully dissents.)

